# FOR PUBLICATION

FILED & ENTERED

MAR 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY hawkinso DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>Paul Gregory Katona<br>Gail Marie Katona<br><br>                                    Debtor(s). | CHAPTER 7<br><br>Case No.:  6:16-bk-13150-MW<br>Adv No:   6:17-ap-01221-MW |
| United States Trustee for the Central<br>District of California, Region 16<br><br>                                    Plaintiff(s),<br><br>    v.<br><br>Paul Gregory Katona, Gail Marie Katona<br><br>                                    Defendant(s). | **MEMORANDUM DECISION AND ORDER FOLLOWING TRIAL**<br><br>TRIAL RE: COMPLAINT TO REVOKE DEBTORS' DISCHARGE PURSUANT TO 11 U.S.C. § 727(d)(1)-(2)<br><br>Date:      October 28-29, 2019<br>Time:      9:30 AM<br>Location:  United States Bankruptcy Court<br>           Courtroom 6C<br>           411 W. Fourth Street<br>           Santa Ana, CA 92701 |

For the Plaintiff, United States Trustee for the Central District of California, Region 16: Everett L. Green, Trial Attorney.

For the Defendants, Paul Gregory Katona and Gail Marie Katona: Douglas A. Plazak, Esq.

**WALLACE, J.**

The United States Trustee's complaint, Docket No. 1, filed November 2, 2017

(the "Complaint"), against chapter 7 debtors Paul G. Katona ("Mr. Katona") and Gail M.

Katona ("Mrs. Katona") (jointly, the "Katonas") alleges that (1) the Katonas knowingly and

fraudulently failed to disclose on the schedules and amended schedules their ownership of material assets constituting bankruptcy estate property, and (2) the Katonas acquired postpetition material assets that constituted bankruptcy estate property and knowingly and fraudulently failed to report the acquisition of such property.  The United States Trustee (the "UST") asks the Court to revoke the Katonas' discharge pursuant to 11 U.S.C. § 727(d)(1)-(2).

This adversary proceeding was tried by the Court on October 28-29, 2019.  At the close of trial, the parties requested leave of Court to file post-trial briefs.  The Court granted the request.  The UST filed its post-trial brief on February 3, 2020.  The Katonas filed the final version of their post-trial brief (with errata correcting certain errors) on February 4, 2020.  The Court took this matter under submission and now renders its decision.

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and General Order 13-05, filed July 1, 2013, of the United States District Court for the Central District of California.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(J), (O).  Venue is proper pursuant to 28 U.S.C. § 1409.

The UST and the Katonas have consented on the record to this Court's final determination of the matters here in controversy under the rule of *Stern v. Marshall*, 564 U.S. 462 (2011) and *Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).

## Elements of 11 U.S.C. § 727(d) Causes of Action

11 U.S.C. § 727(d)(1) provides in relevant part that upon request of the United States Trustee, and after notice and a hearing, the bankruptcy court shall revoke a discharge if the discharge was obtained through the fraud of the debtor, and the United States Trustee did not know of such fraud until after the granting of the discharge.  11 U.S.C. § 727(d)(2) provides in relevant part that upon the United States Trustee's request, the bankruptcy court shall revoke a discharge if the debtor acquired property of the estate and knowingly and

fraudulently failed to report the acquisition of such property.

As a general rule, to obtain relief under section 727(d)(1), the plaintiff must prove that the debtor committed fraud in fact.  The plaintiff must also prove that it was unaware of the fraud at the time the discharge was granted.  *United States Trustee v. Valencia (In re Guadarrama),* 284 B.R. 463, 469 (C.D. Cal. 2002); *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 924-25 (B.A.P. 9th Cir. 1994).  The fraud must be material, that is, it must have been sufficient to cause the discharge to be denied if such fraud were known at the time of the discharge.  *Jones v. U.S. Trustee,* 736 F.3d 897, 900 (9th Cir. 2013).  A false statement or omission is material if it contains information that would aid in understanding the debtor's financial affairs.  *Id.*  It does not have to be of a type that will harm or prejudice creditors.  *United States Trustee v. Valencia (In re Guadarrama),* 284 B.R. at 473.  The plaintiff may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee.  *Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992).  The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct.  *Id.*  Additionally, fraudulent intent may be inferred from all the surrounding circumstances.  *Id.*  Section 727(d)(1) is construed against the objector and liberally in favor of the debtor.  *United States Trustee v. Valencia (In re Guadarrama),* 284 B.R. at 469-70.

A knowing and intentional failure to disclose material assets on the bankruptcy schedules constitutes "fraud" within the meaning of 11 U.S.C. § 727(d)(1).  *United States Trustee v. Mazzone (In re Mazzone)*, 510 B.R. 439, 444 (Bankr. D. Mass. 2014); *Trustee v. Wilkerson (In re Wilkerson)*, 470 B.R. 398, 400 (Bankr. W.D. La. 2012) ("Courts have repeatedly found that a debtor's failure to report assets on bankruptcy schedules is sufficient to revoke the discharge under section 727(d)(1)"); *Lightfoot v. Landry (In re Landry)*, 350 B.R. 51, 59 (Bankr. E.D. La 2006) ("The intentional omission of assets from the debtor's schedules has been found to qualify as grounds for revocation of a discharge under § 727(d)(1)").

1    To prove up a cause of action under 11 U.S.C. § 727(d)(2), a plaintiff must prove that

2    the debtor acquired or became entitled to acquire property of the estate and knowingly and

3    fraudulently failed to report or deliver the property to the trustee.  Both elements must be

4    met, and the plaintiff must prove that the debtor acted with the knowing intent to defraud.

5    *Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992); *Bowman v. Belt Valley Bank (In re*

6    *Bowman),* 173 B.R. 922, 925 (B.A.P. 9th Cir. 1994).

7    With respect to causes of action under both section 727(d)(1) and section 727(d)(2),

8    the plaintiff must prove up the case by a preponderance of the evidence.  *United States*

9    *Trustee v. Valencia (In re Guadarrama),* 284 B.R. 463, 469 (C.D. Cal. 2002).

10

11    <u>Contentions of the Parties</u>

12    As discussed above, the Complaint seeks revocation of the Katonas' discharge

13    based upon a failure to schedule assets and report income.

14    The Katonas do not deny that they failed to disclose certain material assets on their

15    bankruptcy schedules or failed to timely disclose the postpetition acquisition of material

16    assets constituting bankruptcy estate property.  They insist, however, that these failures

17    were innocent and inadvertent as opposed to knowing and fraudulent.  Consequently, a

18    resolution of this adversary proceeding requires the Court to make findings and

19    determinations regarding the Katonas' states of mind with respect to their failure to schedule

20    the assets here at issue.  This is an inquiry into human consciousness – an ethereal,

21    intangible thing that perhaps possesses qualities or components beyond those of physical

22    existence.[1]

23    <u>Inadvertence and Forgetfulness Versus Fraud:  How Are They to Be Differentiated?</u>

24    Human memory is fallible, and certainly a failure to list an asset on the schedules or

25    in the statement of financial affairs can be a result of mere forgetfulness as opposed to

26    _____

27    [1]  *See Mind & Cosmos:  Why the Materialist Neo-Darwinian Conception of Nature Is Almost*
     *Certainly False*, Thomas Nagel (Oxford University Press, 2012) at 13 (" . . . there are doubts about

28    whether the reality of such features of our world as consciousness, intentionality, meaning, purpose,
     thought, and value can be accommodated in a universe consisting at the most basic level only of
     physical facts – facts, however sophisticated, of the kind revealed by the physical sciences.").

arising from an intent to deceive.

Events can jog a person's memory and lead the person to recall things that had been temporarily forgotten.  In a bankruptcy context, a panel trustee's question to the debtor at a section 341(a) meeting may jog a debtor's memory and prompt the debtor to recall an asset that hadn't been scheduled.  A receipt of money or other property during the pendency of a bankruptcy case may jog a debtor's memory and prompt a recollection of an unscheduled asset.  If a debtor is put to the task of amending his or her schedules, the mental work involved in such a task in some instances can jog the debtor's memory and lead the debtor to remember the existence of assets temporarily forgotten at the time the schedules were initially prepared.

In determining whether an omission from the schedules is innocent forgetfulness or a product of a deliberate attempt to defraud and deceive, a bankruptcy court can look at all the surrounding circumstances and consider the entire record in the case.  In this vein, a pattern of multiple omissions of assets from the schedules and statement of financial affairs tends to look more suspiciously like fraud than a single, isolated omission.  An omission of a major, valuable asset may be more significant than an omission of a minor asset of relatively trivial value.  If repeated memory jogs occur during a bankruptcy case and an asset still remains undisclosed, this tends to more strongly indicate fraud than a situation where there are no or few memory jogs.

## Case History

The Katonas filed a voluntary joint petition for relief under chapter 7 on April 7, 2016.  Their retained bankruptcy counsel, Manfred Schroer, Esq., provided them with a client questionnaire to assist in the preparation of their schedules.  The questionnaire asked questions about whether the Katonas owned stocks, bonds, warrants and certain kinds of other property and whether they expected to receive a trust payment, tax refund, insurance payment and other kinds of payments.  In each instance, they checked the "no" box.  The Katonas filed Schedules A/B, D, E/F, G, H, I and J and a Statement of Financial Affairs on

April 19, 2016.  They checked the "no" boxes for lines 18 (bonds, mutual funds or publicly traded stocks), 25 (trusts), 26, 30-35, 38 and 53 (other property of any kind not already listed) on Schedule A/B.  Additionally, they answered "$0.00" with respect to inquiries made in Schedule I concerning interest and dividends and "other monthly income" (other than a listing of $217 with respect to a son's contribution to a car payment).  The relevant documents were signed by the Katonas under penalty of perjury.

At a section 341(a) meeting of creditors held on May 11, 2016, an attorney for judgment creditor Royce Napoli asked Mrs. Katona whether she was a beneficiary of any trust.  She answered "no."  The attorney then asked, "Not a, not a Proulx family trust?"  She again answered "no."[2]

The Katonas filed an amended Statement of Financial Affairs on April 27, 2016, and an amended Form 122A-1 Means Test and amended Schedules A/B, G, I, J on May 25, 2016.  An amended Schedule C was filed December 14, 2016.  None of the amendments described above disclosed the omitted assets discussed below.

The Katonas received a discharge on November 2, 2016.

Assets Omitted From the Katonas' Schedules and Statement of Financial Affairs

1.  Interest in Prudential Common Stock.

Prior to the petition date, Mrs. Katona and her siblings owned a brokerage account (the "Account") at Prudential Financial, Inc. ("Prudential") which held Prudential common stock.  Mrs. Katona owned 960 of the 1963 shares held in the Account.  The Joint Pretrial Stipulation states that from at least 2014 to 2018, Prudential issued dividend checks payable to Mrs. Katona and her siblings on a quarterly basis, including but not limited to January 4, 2016, March 17, 2016, June 21, 2016, September 21, 2016 and December 20, 2016.  Each year from 2014 through 2018, Prudential issued IRS Form 1099-DIVs to Mrs. Katona reflecting the payment of dividends to Mrs. Katona.  In 2016, Mrs. Katona and her siblings received $5,496.40, and Mrs. Katona's allocation was $1,374.10.  Mrs. Katona

---

[2]  UST Exhibit 8 at page 194.

provided to her accountant the IRS Form 1099-DIVs reporting payment of Prudential dividends to Mrs. Katona.

The Prudential stock was not listed on the schedules, amended schedules or the statement of financial affairs, and the Chapter 7 Trustee did not become aware of the Prudential common stock owned by Mrs. Katona until after the discharge was granted. The Joint Pretrial Stipulation states in numbered paragraph 36 that as of December 2018, the Prudential common stock had a value of approximately $90 per share and that Mrs. Katona's 960 shares had a value of "approximately $45,700." This seems to be an obvious mathematical error. However, for purposes of this decision, the Court will regard the value of Mrs. Katona's Prudential common stock to be in the range of $45,700 instead of $86,400.

At trial, Mrs. Katona testified that she had been receiving money in respect of the Prudential common stock since 2002. She asserts that she did not understand that she was an owner of Prudential common stock. Instead, she would meet periodically with her sister and her sister would give her a share of the dividends. Furthermore, she authorized her sister to sign the dividend checks and cash them on her behalf. However, she may have signed one or two checks herself.

The periodic quarterly income from the Prudential common stock owned by Mrs. Katona was not listed in the schedules, amended schedules or the statement of financial affairs as either dividend income or under an alternative description, such as "miscellaneous income" or "other income."

2. Interest in the Proulx Family Trust.

Mrs. Katona is a beneficiary of a trust established by her parents, the Proulx Family Trust of 1989 (the"Proulx Trust"). The Katonas did not list Mrs. Katona's interest in the Proulx Trust in the schedules, the amended schedules or the statement of financial affairs. At the section 341(a) meeting of creditors, Mrs. Katona was asked if she was a beneficiary of a trust. She answered "no." More pointedly, she was then asked whether she was a beneficiary of the Proulx Family Trust. In her sworn testimony, she again answered "no." UST Exhibit 8 at page 194.

The Proulx Trust liquidated a life insurance policy for $485,538.34 in 2012.  On December 22, 2016, Mrs. Katona received a check from the Proulx Family Trust for the additional cash surrender value of a life insurance policy.  At the time of the Katonas' bankruptcy filing, the Proulx Trust owned property having a value of several million dollars.[3]  Much of this property was held free and clear.[4]

3.   Interest in Katona Family Trust.

Mr. Katona was a beneficiary with respect to the Katona Family Trust.  The Katona Family Trust held title to real property in Hermosa Beach, California and sold such property for $1.23 million in 2009.  In 2012, the Katona Family Trust distributed approximately $83,000 to Mr. Katona.  Three months after the petition date, on July 23, 2016, Mr. Katona received a check from the "Sale of Gold from Katona Trust" in the amount of $1,140.

Mr. Katona did not disclose the existence of the Katona Family Trust or his right or entitlement to receive income from the Katona Family Trust in his original or amended schedules or statement of financial affairs or in his testimony at the section 341(a) meeting of creditors.

4.   Undisclosed Prepetition Vehicle Sales.

Numbered paragraph 18 on the statement of financial affairs asks a debtor, "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"  The Katonas answered this question "no."  As it turns out, however, they did transfer various items of property:  a 2003 Toyota, sold for $8,300 on February 21, 2015; a 2005 Ford, sold for $8,450 on March 17, 2015; a Ford Expedition, sold for $8,700 on March 26, 2015; and a furnace, sold for $5,250 on November 2, 2015.  These sales transactions were not disclosed either the original or in the amended statement of financial affairs.  Joint Pretrial Stipulation at numbered paragraphs 47 - 54.  The combined gross selling price of these items tallies to over $30,000 – certainly not an immaterial amount.

---

[3]  Reporter's Transcript, Docket No. 77, at page 175 of 243, lines 8-12.
[4]  Reporter's Transcript, Docket No. 77, at page 176 of 243, lines 19-24.

1

2

3

4

Mr. Katona testified that he believed he was not required to list these transactions in his bankruptcy petition "[b]ecause we didn't sell them below value, and it was like the ordinary course of business."[5]  (The record in this case reflects that Mr. Katona is a construction contractor, not a car dealer or furnace retailer).

5

6

## Analysis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Earlier in this Memorandum, the Court referred to "memory jogs" – events that might serve to jog a person's memory with respect to forgotten matters.  The memory jogs for the Katonas in this case were numerous and frequent.  First, there was their attorney's client questionnaire, inquiring into the Katonas' income and assets.  Page 11 of the questionnaire called for the Katonas to list "interest & dividends" as well as "payments from any source."  The Katonas listed zero in each instance.  Second, there were the original schedules and the original statement of financial affairs.  As discussed above, the Katonas failed to list their interests in the Prudential stock, the Proulx Family Trust, and the Katona Family Trust in the schedules or in the statement of financial affairs.  Third, there was the section 341(a) meeting of creditors, where questions were asked about the Katonas' property and income (and, quite specifically, the Proulx Family Trust).  Fourth, fifth and sixth were the amendments of the schedules and/or statement of financial affairs on April 27, 2016, May 25, 2016 and December 14, 2016.  In each instance, an event occurred that could reasonably have been expected to focus the Katonas' minds and attention on the assets they owned but had not disclosed.  The Katonas would have the Court believe that they just continued to "forget" or "overlook" their ownership of Prudential stock and interests in the Proulx Family Trust and Katona Family Trust (and the income therefrom), not merely once but on six separate occasions.

25

26

27

The same forgetfulness or inattention to detail does not seem to have been operating when it came to listing creditors holding claims.  This is evidenced by the fact that no party has produced any credible evidence that the Katonas forgot to list any of their creditors.

28

---

[5]  Reporter's Transcript, Docket No. 77, at page 125 of 243, lines 20-21.

An additional memory jog was Mrs. Katona's periodic receipt of Prudential dividend moneys from her sister.  Each time she pocketed this money, she had an occasion to think, "should I disclose either this income or the underlying asset in connection with my bankruptcy case?"  And then there were the IRS Form 1099-DIVs from Prudential that Mrs. Katona provided to her accountant.

There occurred in this case multiple failures to disclose material assets despite multiple opportunities to do so.  Importantly, the assets not disclosed are of the type that readily lend themselves to concealment:  cash payments (from Mrs. Katonas' sister in respect of the Prudential stock) and interests in trusts making occasional but not regular distributions.

For these reasons, and having had an opportunity to observe the demeanor of the Katonas when they testified at trial, the Court does not regard as credible the testimony of the Katonas that mere inadvertence or forgetfulness caused their failure to timely disclose their interests in the Prudential stock, the Proulx Family Trust and the Katona Family Trust. Fraudulent intent may be inferred from the surrounding circumstances, and here the Court draws this inference based upon the considerations discussed above.  The Court concludes that such failures to disclose were both knowing and fraudulent in nature.

The fraud that occurred here was material.  If these matters had been brought to the Court's attention before the discharge was granted, the Court would have denied the discharge under 11 U.S.C. § 727(a)(2) (concealment of property with intent to hinder, delay or defraud) and 11 U.S.C. § 727(a)(4)(A) (knowing and fraudulent making of a false oath). Equally true, the omissions also related to information that would have aided the Chapter 7 Trustee in understanding the Katonas' financial affairs.  The Chapter 7 Trustee, John Pringle, was seriously misled by the Katonas' false and fraudulent schedules, amended schedules and statement of financial affairs. He testified at trial about the adverse effect of Mrs. Katona's conduct on his administration of the case, noting that he had been led by the schedules to believe that there were no assets to administer.[6]

---

[6]  Reporter's Transcript, Docket No. 77, at pages 55-58 of 243.

1      The record in this case shows that the UST, plaintiff herein, did not know of the fraud

2   occurring in this case until after the granting of the discharge on November 2, 2016.

3   Judgment creditor Royce Napoli became suspicious of schedules filed by the Katonas and

4   moved for a Rule 2004 examination on September 22, 2017.  The Prudential stock was

5   found as a result of this examination, leading Ms. Napoli to notify Abraham Feuerstein, an

6   attorney for the UST.[7]  The UST commenced this adversary proceeding on November 2,

7   2017.

8      Based upon the foregoing analysis, the Court concludes that the UST has proved up

9   all the elements of a cause of action under 11 U.S.C. § 727(d)(1) and therefore revokes the

10   discharge granted to the Katonas.

11      As an alternative ground for its decision, the Court determines that Katonas acquired

12   property that was property of the estate, namely, the dividends paid on the Prudential stock

13   on June 21, 2016 and September 21, 2016 and $1,140 from the Katona Family Trust on

14   July 23, 2016.  They then knowingly and fraudulently failed to report the acquisition and

15   entitlement to such property to the Chapter 7 Trustee.  The Court therefore determines that

16   the discharge is also subject to revocation pursuant to 11 U.S.C. § 727(d)(2).

17      The UST shall lodge a form of judgment within ten (10) days of the date of filing and

18   entering of this Memorandum Decision and Order Following Trial.

19      IT IS SO ORDERED.

20                                                              ###

21

22

23

24

25

26

27   Date: March 10, 2020                                  Mark S. Wallace
                                                            United States Bankruptcy Judge
28

---

[7]  Reporter's Transcript, Docket No. 77, at pages 184-185 of 243.